GEN. WM. WILLIAMS.
SIR: — The bearer hereof, Mr. Henry Fleury, informs me that he is about bargaining with you for the purchase of a new vessel and a cargo for her, also for a quantity of Indian corn. (48) In case you and he should agree, I will guarantee any contract he may enter into with you for the same or any part thereof, and am
Your ob't serv't,
JOSIAH COLLINS.
On the credit of this letter, the plaintiff sold to Fleury a vessel and cargo for $2,072.25, for which he gave three bonds, each bearing date 11 April, 1804; one for $902.25, payable 1 January, 1805, with interest from 15 June, 1804; another for $585, payable 15 June, 1805; and the third for $585, payable 15 June, 1806 N.C.. There was a credit of $675.71 indorsed on the first bond, 15 June, 1806 N.C. and a credit of $450 indorsed on the last bond, 12 January, 1808. On 17 November, 1806 N.C. Williams assigned the bonds to Thomas E. Summer, who, on 17 August, 1807, brought suit on them in Chowan County Court, and obtained judgment at March Term, 1808, for £ 604 7s. 10d. He sued out execution, which was returned to the next term, "Nothing found," and Williams having, in his assignment of the bonds, "obliged himself to guarantee the ultimate payment thereof to Summer," did, upon the application of Summer, pay the amount due upon the bonds, and on 16 September, 1808, brought suit against Collins on his aforesaid letter of guaranty. The defendant pleaded the "general issue, set-off, statute limitation."
On the part of the defendant it was proved that on 29 October, 1806 N.C. Fleury mortgaged to him seven lots and one-half lot of ground, with their improvements, lying in the town of Edenton, to secure the sum of £ 1,256 18s. 8d. due by note; and on the same day Josiah Collins, Jr., took from Fleury a mortgage for the same property on the back of the foregoing, to secure the payment of $954.22, due by note; and on 15 January, 1807, Fleury mortgaged the same property, with a storehouse and shop, eleven negroes and a considerable quantity of furniture, to certain merchants in New York, to secure the *Page 41 
payment of $6,000 due by him to them. The defendant also proved that Fleury possessed the property mentioned in (49) the foregoing mortgages for many years before, and that the lots were among the most valuable in the town of Edenton; that on 6 August, 1806 N.C. one Francis Vallette, of Edenton, having died, bequeathed to Fleury property of the value of $4,000, which came to his hands.
It appeared in evidence that Collins, the defendant, was a subscribing witness to the mortgage executed by Fleury, on 15 January, 1807, to certain merchants in New York, and that the property included in this mortgage, but not in the preceding mortgages, was sold for £ 1,200 or £ 1,300. It did not appear that Fleury had any property out of which the debt to the plaintiff could have been satisfied, except the property before enumerated.
The jury rendered the following verdict, to wit: "The jury find, from the evidence adduced, that the defendant must have been better acquainted with the circumstances of Henry Fleury than the plaintiff, and that the plaintiff could not at any period have obtained his money from Henry Fleury, even though he had commenced suit as soon as his cause of action accrued, and that the defendant did assume liability within three years; that there is no set-off, and assess the plaintiff's damages to £ 716 1s. 8d." A rule was obtained to show cause why a new trial should not be granted, on the grounds, (1) that the verdict was contrary to law; (2) that it was contrary to evidence, at least so far as it found that the plaintiff could not, at any time after the debt became due, have obtained payment from Fleury. The rule for a new trial was sent to this Court.
Browne, in support of the rule, said this contract must be considered either as a primary or a secondary contract; if as a primary contract, then the plaintiff's cause of (50) action accrued at the respective times when Fleury's bonds fell due, and his right of recovery is barred by the statute of limitations. But he did not suppose this contract ought to be so considered; it is a contract of a secondary kind. Defendant agreed to guarantee the debt to the plaintiff, and is placed by the law in the same situation with indorsers of bills of exchange or promissory notes. He agreed to guarantee a primary contract, and the law, whilst it deems this guaranty binding upon him, does so sub modo only; it at the same time imposes *Page 42 
certain obligations upon him who claims the benefit of this guaranty; it declares to him that he shall use due diligence to reap the benefit of the primary contract, and to collect the debt from him who really owes it. For the person making this secondary contract only agrees to pay the debt if the principal does not; and in all cases is discharged from liability if due diligence be not used to enforce the contract against the principal and get the money from him. In this case Williams had discharged Collins from his guaranty by the indulgence which he extended to Fleury. Had he sued Fleury when his bonds became due, the money could have been collected; but he neither sued nor demanded payment, nor gave notice to Collins of Fleury's neglect to make payment. This is a commercial transaction, and is to be governed by the general law respecting commercial contracts, where one man guarantees the payment of another's debt. Williams having failed to use the diligence which that law required in demanding payment, and giving notice of Fleury's neglect or refusal to make such payment, has discharged Collins, who, not having received any such notice, remained ignorant of Fleury's failure to pay at the time when he took the mortgage to secure his own debt. This is the legal presumption, for every man shall be presumed to have done his duty until the contrary appears; Fleury shall be (51) presumed to have paid his bonds at the times they respectively fell due, or that he would have paid them if Williams or his assignee had applied for payment. It was not the duty of Collins to inquire whether he had made such payment; it was the duty of Williams to give him notice if Fleury failed to pay; and to compel him to make good the debt to Williams would be, not to conform to the true spirit of the contract on his part, but to subject him to a hardship against which he has no relief. If he had been regularly called upon for payment as Fleury made default, he could have advanced the money to Williams and indemnified himself out of Fleury's property. Williams gave indulgence until Fleury became insolvent, and Collins has not been called upon for payment until he has lost all opportunity of indemnifying himself.
Collins was liable on his letter of guaranty only in case of Fleury's failing to pay; and it may be laid down as a general principle that where one man agrees to indemnify another against any loss which he may sustain from any transaction, the person thus indemnified must use ordinary diligence to prevent any loss. Doug., 514; 3 Term, 524; 8 East, 242. Here the first demand on Fleury was by suit, one year and two months after the last bond became due; and the first notice of Fleury's *Page 43 
delinquency that was given to Collins was two years and three months after the last bond became due. This was not using due diligence to get the money from Fleury and prevent a loss to Collins.
For the reasons urged by the defendant's counsel, let the rule for a new trial be made absolute.
Cited: Eason v. Dixon, 19 N.C. 79; Shewell v. Knox, 12 N.C. 412;Straus v. Beardsley, 79 N.C. 67.
(52)